UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PAUL PETTINGILL,<br><br>    Plaintiff,<br><br>  v.<br><br>ANDREW SAUL, Commissioner of Social Security<br><br>    Defendant. | No.  2:18-cv-2979-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  The parties have filed cross-motions for summary judgment.  ECF Nos. 14 & 19.  For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I. Background

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since July 20, 2013.  Administrative Record ("AR") at 186-87.  His application was denied initially and upon reconsideration.  *Id.* at 86-90, 92-96.  A hearing was subsequently held before administrative law judge ("ALJ") Daniel G. Heely.  *Id*. at 32-65.  Plaintiff was represented by counsel at the hearing, at which plaintiff and a vocational expert testified.  *Id.*

The ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1]  *Id*. at 13-22.  The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since July 20, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).

* * *

3. The claimant has the following severe impairments: complex regional pain syndrome and degenerative disc disease (20 CFR 404.1520(c)).

* * *

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) which consists of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, standing and walking up to 6 hours in an 8-hour workday, and sitting up to 6 hours in an 8-hour workday. He could never climb ladders ropes or scaffolds. He could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. He could never work around hazards such as moving dangerous machinery or unprotected heights. He could not operate motor vehicles.

\* \* \*

6. The claimant is capable of performing past relevant work as a solar energy system designer as generally performed. This work does not require the performance of work-related activities by the claimant's residual functional capacity (20 CFR 404.1565).

\* \* \*

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 20, 2013, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 15-21.

Plaintiff's request for Appeals Council review was denied on September 11, 2018, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II.   Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. Analysis

Plaintiff's motion advances three arguments.[2] First, he argues that the ALJ failed to correctly evaluate his complex region pain syndrome ("CRPS"). ECF No. 14 at 13-16. Second, plaintiff contends the ALJ erred in evaluating the side effects of his medication. *Id*. at 16-17. Third, plaintiff argues the ALJ erred in finding that he could perform his past relevant work. *Id*. at 9-12. For the following reasons, the court finds that remand is warranted based on plaintiff's first argument.

A. Relevant Background

In 2013, plaintiff presented to the emergency room with complaints of right foot pain and swelling, which he had been experiencing for four days. AR 300. He reported that he had experienced these symptoms in the past, but they had not been as severe. *Id*. Plaintiff was treated for leg edema and discharged. *Id*. at 301-02.

In May 2015, Dr. Patel, plaintiff's primary care provider, referred plaintiff to Stanford University Pain Management Clinic for treatment for CRPS. AR 327. Treatment notes from the initial evaluation noted plaintiff experienced pain in his lower extremities, which were described as throbbing, shooting, burning, tender, and exhausting. AR 327. Plaintiff further reported that on average his pain was a level six on a ten-point scale, but he intermittently experienced pain at a level eight. *Id*. at 327. On examination, plaintiff had decreased sensation to cold and light touch in the distribution of the right sural nerve starting at the mid-foot and extending more distally. *Id*.

---

[2] Plaintiff's arguments are not addressed in the order presented in his motion, but have been reorganized to align with the sequential evaluation.

at 329. He also had similar decreased sensation over the right fourth toe and positive tenals signs over the right sural nerve. *Id*. His left foot exhibited more edema, sweating, and discoloration than his right foot, and his ability to heel and toe walk was limited due to foot pain. *Id*. Plaintiff's physician recommended plaintiff's Gabapentin dose be increased and Desipramine be added to his medications. *Id*. at 330; 372.

The following month, plaintiff presented to Dr. Patel with complaints of excruciating nerve pain in his right foot. *Id*. at 366. Examination showed significant tenderness and swelling in his right lower extremity. *Id*. Plaintiff was started on Tramadol for pain and instructed to follow up with Sandford University. *Id*. at 367.

On July 2, 2015, plaintiff underwent a physical therapy evaluation at Stanford University. *Id*. at 336-41. At that time, plaintiff described steady/constant pain in his legs with intermittent swelling flares. AR 337. His pain was noted to worsen with standing, bending/reaching, and walking. *Id*. Examination showed swelling, color changes, and allodynia over the lateral dorsum of the right foot, and plaintiff had an antalgic gait limiting his ability to push off. *Id*. at 338. Less than two weeks later, plaintiff underwent a bilateral lumbar sympathetic plexus block. *Id*. at 344-45. At his follow-up appointment, plaintiff continued to complain of pain without change in character or location. *Id*. at 347-50. His physical examination, however, was unremarkable. *Id*.

In August 2015, plaintiff was seen again at Stanford University for pain management. *Id*. at 356-59. He continued to complain of constant throbbing and burning pain, which was exacerbated during episodes of swelling in his legs. *Id*. at 356. Physical examination showed right sural nerve distribution pain, and it was recommended plaintiff receive a sural nerve block to evaluate his symptoms. *Id*. at 358. Plaintiff was next seen in October 2015, at which time he reported pain was unchanged from its baseline. *Id*. at 443. He also reported having pain flare-ups every two months, which typically lasted about two weeks. *Id*. Examination showed decreased sensation to heat and cold in the dorsal aspect of his feet bilaterally, as well as decreased sensation in his fingers bilaterally. *Id*. at 445. In addition to CRPS, plaintiff was diagnosed with small fiber neuropathy of bilateral lower extremity. *Id*. He was instructed to continue his medication and home physical therapy and encouraged to use TED stockings and elevate his legs

1    to minimize swelling. *Id*. at 446.  Plaintiff was seen by Dr. Patel the following month for

2    medication refills. *Id*. at 430-33.  At that time his symptoms included edema, back pain, and

3    bilateral leg pain. *Id*. at 432.  Dr. Patel also noted that plaintiff had undergone "several testing

4    and treatments at Stanford University without any good results." *Id*. at 430.

5         January 2016 treating notes from Stanford University reflect plaintiff's pain had improved

6    from its baseline, but he continued to get flare-ups every other month that lasted about two weeks.

7    *Id*. at 497.  Examination also continued to show decreased sensation in his feet and fingers. *Id*. at

8    499.  In April 2016, plaintiff reported that he continued to have flare-ups every other month, but

9    he was now experiencing no pain one to two days a week. *Id*. at 531.  Trileptal was added to his

10   medication regiment, and plaintiff was instructed to follow up in six weeks. *Id*. at 537, 540.

11        Treatment notes from late May 2016 reflect that plaintiff's pain was more tolerable, his

12   pain flare-ups were less frequent and shorter in duration, and he was "able to do more activity and

13   take care of his family." *Id*. at 548. *Id*.  Plaintiff's symptoms were described as "an achy

14   sensation" in his feet and calf muscles, which were more tolerable but required "limping to

15   compensate." *Id*.  In August 2016, plaintiff reported that his medication regiment was helpful and

16   that he had not had a pain flare-up in the past two months. *Id*. at 562.  However, plaintiff also

17   reported significant cognitive issues, including memory loss. *Id*.  Although plaintiff was noted to

18   be doing well on Trieptal, the medication was discontinued due to its side effects. *Id*. at 564.

19   Despite the apparent improvement in his symptoms, plaintiff's physician noted that "[a]t this

20   point in time the pain interferes with work and walking." *Id*. at 562.

21        Plaintiff was next seen in October 2016, at which time he reported that his cognitive

22   slowing had somewhat abated since discontinuing Trileptal, although he continued to feel a bit

23   "fuzzy." *Id*. at 571.  Plaintiff also reported that he had not been taking desipramine the past two

24   weeks due to insurance issues, which had resulted in "sharp pain" during the period he was off

25   the medication. *Id*.  Plaintiff's physician again noted that plaintiff's pain interfered with his

26   ability to walk and work. *Id*. at 571.  December 2016 treatment notes reflect that plaintiff had not

27   had a pain flare for the past four to five months. *Id*. at 578.  Plaintiff, however, reported

28   constantly experiencing low-level, burning pain in his feet that radiated up to his knees. *Id*. at

578. He stated that he felt the pain was "tolerable," but he also reported that it precluded him from performing certain physical activities and interfered with his ability to care for his children. *Id*. at 578. In February 2017, plaintiff complained of burning pain in his feet radiating up his calves, which "comes and goes." *Id*. at 587. Plaintiff's physician recommended installing a spinal cord stimulator, which required plaintiff to first undergo psychiatric pain and physical therapy evaluations. *Id*. at 589.

In June 2017, plaintiff sent an email to his medical provider concerning the spinal cord stimulator and inquiring whether his provider had determined whether his insurance would cover the psychiatric and physical therapy evaluations. *Id*. In that email, plaintiff also reported having more frequent flare-ups, which had required him to periodically use crutches over the prior four months. *Id*. at 596. In response, plaintiff's physician instructed him to schedule another appointment. The record, however, does not contain any subsequent medical records.[3]

With respect to medical opinion evidence, Dr. Patel, one of plaintiff's treating physician, completed a medical source statement in January 2015. AR 419-20. Therein, Dr. Patel stated plaintiff had been diagnosed with CRPS, which caused severe pain, fatigue, and leg swelling. *Id*. at 419. Dr. Patel opined that plaintiff could perform less than sedentary work. *Id*. He further opined that plaintiff's symptoms would frequently interfere with his ability to maintain attention and concentration, and that plaintiff was incapable of performing physical work and low stress jobs. *Id*. at 420.

Two non-examining physicians, Dr. F. Green and Dr. E. Cooper, also provided opinions regarding plaintiff's functional limitations in 2015. *Id*. at 71-72, 81-82. Based on their review of plaintiff's medical records, both physicians opined plaintiff could perform medium work with only frequent postural limitations, except he could only occasionally climb ladders, ropes, and scaffolds. *Id*.

/////

---

[3] Plaintiff's administrative hearing was held on June 6, 2017. AR 32. Presumably, plaintiff was unable to be seen by his provider in time to have the records submitted for the ALJ's consideration.

In May 2017, plaintiff's ex-wife, Lori Pettingill, drafted a letter describing the impact plaintiff's CRPS had on his ability to function. *Id*. at 289. Ms. Pettingill stated she has known plaintiff for over 17 years and continues to reside with him due to financial reasons. *Id*. She explained that at the time of her letter, plaintiff experienced daily pain that increased in severity during episodic flare-ups, which were accompanied by swelling and change in skin color of feet. *Id*. She also stated that when his condition flared-up, plaintiff could not put on shoes, bear weight on his feet, and that he must use crutches for mobility. *Id*. Ms. Pettingill further stated plaintiff could no longer engage in outdoor activities or "participate in anything," and that his medication left "him mentally hazy, unable to concentrate, and forgetful." *Id*.

B. Discussion

Plaintiff argues that the ALJ failed to properly evaluate his CRPS pursuant to Social Security Ruling ("SSR") SSR 03-2p. ECF No. 14 at 16-25. He further claims that due to the ALJ's misunderstanding as to the nature of this impairment, the ALJ did not properly evaluate Dr. Patel's treating opinion and Ms. Pettingill's statement. *Id*.

CRPS is a chronic pain syndrome "often resulting from trauma to a single extremity." SSR 03-2p, 2003 WL 22399117 (S.S.A. Oct. 20, 2003).[4] Its primary characteristic "is a 'continuous, intense pain out of proportion to the severity of the injury, which becomes worse rather than better over time.'" *Hunt v. Astrue*, 2009 WL 1519543, at *4 (C.D. Cal. May 29, 2009) (quoting National Institutes of Health, National Institute of Neurological Disorders and Stroke Complex Regional Pain Syndrome Information Page, http://www.ninds.nih.gov/disorders/ reflex-sympathetic-dystrophy); *see* SSR 03-2P ("It is characteristic of [CRPS] that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual."). In cases involving CRPS, "[c]areful consideration must be given to the effects of pain and its treatment on

---

[4] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (Social Security Rulings are "binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases.").

an individual's capacity to do work-related and continuous basis." SSR 03-2p. ALJs are also required to pay particular attention to:

> [o]pinions from an individual's medical sources, especially treating sources, concerning the effect(s) of RSDS/CRPS on the individual's ability to function in a sustained manner in performing work activities, or in performing activities of daily living [to] enabling adjudicators to draw conclusions about the severity of the impairment(s) and the individual's RFC.

SSR 03-2p. Where evidence of record is inadequate to determine disability, the ALJ is required to contact the claimant's treating physician "to determine whether the additional information is readily available." *Id.*

In finding plaintiff maintained the ability to perform light work, the ALJ gave little weight to Dr. Patel's treating opinion and Ms. Pettingill's statements. AR 19. In doing so, the ALJ relied almost exclusively on plaintiff's medical records from 2016. *Id.* With respect to Dr. Patel's opinion, the ALJ determined it was entitled to little weight because it was rendered in January 2015 and not based "on the most recent evidence of record that showed the claimant had improved."[5] AR at 19. In reaching that finding, the ALJ provided the following discussion:

> In May 2016, [plaintiff] reported his pain was at a more tolerable level and he was able to do more activity and take care of his family. He was having less frequent and much shorter flares of is symptoms. October 2016 treatment notes indicated he had been doing quite well and at the last few clinic visits he reported he had only a few sporadic "pain flares" accompanied by leg swelling. In December 2016, he reported he had not had a pain flare for the last four to five months.

*Id.*

But the ALJ's summary does not accurately reflect the medical records from 2016 and instead appears to be based on cherry-picking only notations reflecting a positive response to medication. For instance, although May 2016 treatment notes reflect that plaintiff's pain was "at a more tolerable level" and he was "able to do more activity," it also states that plaintiff had to limp to compensate for pain. AR 548. Although August 2016 treatment notes show that

---

[5] The ALJ only afforded some weight to Dr. Cooper and Dr. Green's opinions plaintiff could perform medium work because the medical record showed "he was further limited to light work due to his degenerative disc disease and complex regional pain syndrome." AR 19.

plaintiff's medication was helpful, nonetheless plaintiff's pain interfered with his ability to walk and work. *Id*. at 562. These limitations due to pain were noted again in October 2016. *Id*. at 571. Finally, treatment records from December 2016 not only noted plaintiff's pain was more tolerable—as highlighted by the ALJ—it also reflected plaintiff's pain precluded him from performing "certain physical activities and causes him difficulty in performing child care duties at home." *Id*. at 578.

Thus, plaintiff's 2016 medical records show that his CRPS symptoms, while reduced to some degree by medication, continued to impair his ability to perform daily activities. While it was not inappropriate to note the improvement that occurred after Dr. Patel (and all other medical sources) issued their opinions, the ALJ went beyond that. The ALJ determined that plaintiff could perform light work—including standing and/or walking up to six hours a day—on a consistent basis based solely on a few vague notations reflecting some level of improvement with medication. Significantly, the ALJ ignored the portions of the same medical records reflecting ongoing pain that impaired plaintiff's ability to perform daily activities, including walking. The ALJ also made no mention of plaintiff's June 2017 email exchange with his medical provider, which reflected worsening symptoms with more frequent flare-ups. AR 596.

The ALJ's rejection of Dr. Patel's opinion also demonstrates a failure to evaluate plaintiff's claim under the guidelines set forth in SSR 03-2p. *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (Social Security Rulings are binding on the ALJ, and remand is warranted for failure to comport with a Social Security Ruling). The ALJ rejected Dr. Patel's opinion based on vague statements reflecting improvement in 2016 without first contacting Dr. Patel to determine the degree to which plaintiff's symptoms had improved. Such an approach demonstrates a disregard of SSR 03-2p emphasis on the importance of treating source evidence in CRPS cases and the requirement that ALJ's affirmatively contact treating physicians to adequate develop the record. *See Pyle v. Colvin*, 2014 WL 1029845, at *6 (C.D. Cal. Mar. 14, 2014) (finding that ALJ's rejection of treating opinion based on purported inconsistencies in the evidence was "contrary to the Commissioner's guidelines stressing the particular importance of longitudinal treating source evidence in CRPS cases and directing adjudicators to take affirmative steps to

develop the record with respect to such evidence before relying on nontreating source evidence.").

Aside from not evaluating plaintiff's CRPS under SSR 03-2p, the ALJ's decision reflects a failure to consider whether plaintiff CRPS entitles him to a closed period of disability. To be entitled to benefits under Title II of the Act, a claimant must establish that he is unable to work for a twelve-month period due to medically determinable impairment. 20 C.F.R. §§ 404.1505(a); *see Boswell v. Colvin*, 2016 WL 806203, at *4 (C.D. Cal. Mar. 1, 2016) ("If plaintiff met the definition of disabled under the Act for the requisite twelve months at any time after her alleged onset date of December 4, 2011, she is entitled to benefits for that period, whether or not she remained disabled."); *Rosales v. Colvin*, 2013 WL 1410387, at *4 (D. Ariz. Apr. 8, 2013) ("The ALJ is required to consider a closed period of disability if evidence in the record supports a finding that a person is disabled for a period of not less than twelve months."); *Reynoso v. Astrue*, 2011 WL 2554210, at *7 (C.D. Cal. June 27, 2011); *Yeng Xiong v. Colvin*, 2015 WL 4095675, at *4 (E.D. Cal. July 7, 2015).

As noted above, plaintiff alleged he became disabled on July 20, 2013 (AR 186-87), and Dr. Patel opined in January 2015 that plaintiff was limited to performing less than sedentary work (*id*. at 419-20). The ALJ did not question that Dr. Patel's opinion accurately reflected plaintiff's limitations at the time it was rendered. Instead, the ALJ concluded that it was entitled to little weight because medical records from 2016 reflected that plaintiff's CRPS had improved with medication. Even if that improvement enabled plaintiff to perform light work, as concluded by the ALJ, Dr. Patel's opinion would still support a finding that plaintiff was unable to perform substantial gainful activity from July 2013 through 2015. The ALJ, however, failed to consider whether plaintiff's CRPS rendered him disabled for a closed period.

Accordingly, the matter must be remanded for proper consideration of plaintiff's CRPS in accordance with SSR 03-2p. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to

/////

11

remand to the agency for additional investigation or explanation.")  (internal quotes and citations omitted).

Because remand is warranted on the ground addressed above, the court declines to address plaintiff's remaining arguments.

IV. Conclusion

Based on the foregoing, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

4. The Clerk is directed to enter judgment in plaintiff's favor and close the case.

DATED: May 12, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE